UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARISSA ESCARENO,<br><br>           Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>           Defendant. | CASE NO. EDCV 17-2258 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

Clarissa Escareno ("Plaintiff") brings this action seeking to overturn the decision of the Acting Commissioner of Social Security (the "Commissioner" or "Agency") denying her applications for Disability Insurance Benefits and Supplemental Security Income. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13). For the reasons stated below, the decision of

the Commissioner is REVERSED, and this case is REMANDED for further administrative proceedings consistent with this decision.

## II.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

|   |     |                                                                      |
|---|-----|----------------------------------------------------------------------|
| 1 | (3) | Does the claimant's impairment meet or equal one of the              |
| 2 |     | specific impairments described in 20 C.F.R. Part 404,                |
| 3 |     | Subpart P, Appendix 1?  If so, the claimant is found                 |
| 4 |     | disabled.  If not, proceed to step four.                             |
| 5 | (4) | Is the claimant capable of performing his past work? If              |
| 6 |     | so, the claimant is found not disabled.  If not, proceed             |
| 7 |     | to step five.                                                        |
| 8 | (5) | Is the claimant able to do any other work?  If not, the              |
| 9 |     | claimant is found disabled.  If so, the claimant is found            |
| 10|     | not disabled.                                                        |

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a VE or by reference to the Medical-

Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE"). Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## III.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 17-28).[1] At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 13, 2014, her alleged onset date. (AR 18). At step two, the ALJ found that Plaintiff's chronic pain syndrome, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, asthma, and obesity are severe impairments.[2] (AR 18). At step three, the ALJ determined that

---

[1] Pages two and three of the ALJ's decision are reversed in the administrative record. (AR 18-19).

[2] The ALJ found that Plaintiff's medically determinable impairments of diabetes mellitus, vitamin D deficiency, uterine bleeding, and mood disorder do not cause more than minimal limitations in Plaintiff's ability to perform basic work activities and are, therefore, nonsevere. (AR 18, 20, 21-22). The ALJ also found that Plaintiff's alleged fibromyalgia is not a medically determinable impairment. (AR 20-21).

4

Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 23).

The ALJ then assessed Plaintiff's RFC and concluded that she can perform less than the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a) and SSR 83-10 except:[3]

> [Plaintiff] must use a hand-held assistive device in one hand when walking a distance of 50 feet or more with the other hand available to carry small articles like docket files, ledgers, and small tools; balance frequently; stoop, kneel, crouch, crawl, and climb ramps or stairs occasionally; never climb ladders, ropes, or scaffolds; have no exposure to hazards such as unprotected heights, open bodies of water, and moving mechanical parts of equipment, tools, or machinery; have no concentrated exposure to humidity, wetness, extreme cold, extreme heat, vibration, or respiratory irritants such as fumes, odors, dusts, gases, and poor ventilation; and work in environment with up to a moderate noise intensity level.

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

(AR 23). At step four, based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ determined that Plaintiff is capable of performing past relevant work as a general clerk as actually performed, but not as generally performed. (AR 27-28). Accordingly, the ALJ found that Plaintiff was not under a disability, as defined by the Social Security Act, from February 13, 2014, through the date of the decision. (AR 28).

**IV.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)); Auckland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial

evidence supports a finding, the court must " 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.' " Auckland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## V.

## DISCUSSION

### A. Relevant Treatment History

On June 29, 2015, Plaintiff began treating with the Family Health Center of Joshua Tree. (AR 514). She complained of chronic pain. (AR 514). Norco was prescribed and Plaintiff advised to begin physical therapy. (AR 514). On August 13, Plaintiff reported progressively worsening pain and weakness, which is tolerable with Norco. (AR 510). Her anxiety remains uncontrolled, necessitating frequent use of Diazepam. (AR 510). Plaintiff takes Tramadol at night for pain and to help her sleep. (AR 510). An examination found diffuse weakness in grip strength and major joints and extremities, with decreased range of motion. (AR 511). Plaintiff was assessed with asthma, type 2 diabetes, fibromyalgia, and

generalized anxiety.[4] (AR 511). Katerina Viitala, a physician's assistant, recommended physical therapy to evaluate Plaintiff's fibromyalgia. (AR 511). On September 15, Plaintiff reported a flare up of left-sided numbness, weakness, and pain, which is tolerable only with Norco. (AR 506). Viitala diagnosed anxiety, type 2 diabetes, and fibromyalgia and referred Plaintiff for physical therapy. (AR 507). On November 16, a physical examination was unremarkable. (AR 499). On December 14, Plaintiff presented for continued pain management, which is moderately controlled with current regimen. (AR 496). A physical examination was unremarkable. (AR 497).

On February 15, 2016, Plaintiff reported worsening pain, which radiates down her legs from her lower back and down her arms from her upper back, with associated upper and lower extremity weakness. (AR 494). She asserted struggling with completing activities of daily living, including getting to the bathroom, self-care, and housekeeping. (AR 494). Viitala diagnosed fibromyalgia, anxiety, diabetes, and degenerative disc disease, continued Plaintiff's medications, and ordered a CT scan of Plaintiff's lumbar and cervical spine. (AR 495). On March 14, Plaintiff complained of chronic pain secondary to fibromyalgia and worsening episodes of severe pain related to her degenerative disc disease. (AR 492). Viitala assessed fibromyalgia and degenerative disc disease, prescribed Norco, Neurontin (gabapentin), and Tramadol, and

---

[4] Plaintiff does not dispute the ALJ's finding that her fibromyalgia is not a medically determinable impairment.

8

recommended physical therapy, weight loss, and increased home care assistance. (AR 493).

On March 16, 2016, Viitala reported that Plaintiff has been a patient since June 2015 and has been diagnosed with fibromyalgia, chronic pain, anxiety, and degenerative disc disease. (AR 355). Viitala noted that Plaintiff "is experiencing acute exacerbation and worsening symptoms including weakness and radicular low back pain requiring increase in assistance at home." (AR 355). Viitala opined that Plaintiff requires four hours of assistance to perform activities of daily living, "specifically toileting, and light house work." (AR 355).

On April 15, 2016, Plaintiff presented for chronic pain management of fibromyalgia, muscle spasms, and degenerative disc disease. (AR 490). She reported walking more regularly and an upcoming physical therapy appointment. (AR 490). Viitala assessed fibromyalgia, continued Neurontin, discontinued Diazepam, and began tapering Norco due to long term adverse outcomes. (AR 491). On May 18, Plaintiff presented for continuing management of chronic low back pain and fibromyalgia. (AR 488). She reported impaired quality of life and difficulty completing activities of daily living due to pain and weakness. (AR 488). Plaintiff is unable to lift objects of more than a couple pounds, walk further than her mailbox, climb stairs, or drive. (AR 488). She reported doing well in physical therapy, but noted that it causes "significant pain." (AR 488). Viitala assessed low back pain and fibromyalgia

and advised Plaintiff to continue physical therapy and current medicine regimen. (AR 489).

On June 9, 2016, a physical examination by Andre Kasko, D.O, Viitala's supervising physician, indicated arthralgias, back pain, joint stiffness, and myalgias. (AR 485). Plaintiff ambulated with the help of a walker and her gait was slowed. (AR 486). Dr. Kasko assessed fibromyalgia and chronic low back pain, continued Plaintiff's medicine regimen, and advised Plaintiff to initiate an exercise program and follow-up with her physical therapist. (AR 487). On July 26, Plaintiff reported chronic back pain, primarily located in left, mid, and lower lumbar spine, radiating to left thigh. (AR 475). She characterized her pain as "constant, moderate, and sharp." (AR 475). A physical examination by Dr. Kasko was positive for chronic back pain and myalgias (fibromyalgia). (AR 475).

**B. The ALJ Did Not Provide Germane Reasons For Rejecting Viitala's Opinion**

On May 18, 2016, Viitala submitted a medical source statement of ability to do work-related activities. (AR 356-61). Viitala reported that Plaintiff's degenerative disc disease, arthritis, weakness, and radicular symptoms limit her ability to perform work-related functions. (AR 357). She opined that Plaintiff cannot lift or carry any weight. (AR 356). Plaintiff is limited to sitting, standing, or walking for fifteen to twenty minutes without interruption and can sit, stand, and walk for two hours each during

10

an eight-hour workday. (AR 357). Viitala reported that Plaintiff uses a walker to ambulate and can walk only fifty feet without the use of an assistive device. (AR 357). Because of diffuse muscle weakness, reduced grip strength, and decreased lower extremity strength, Plaintiff is limited to occasional reaching, handling, fingering, pushing/pulling, and operation of foot controls. (AR 358). Viitala further opined that Plaintiff can frequently balance, occasionally climb stairs and ramps, but can never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. (AR 359). Plaintiff can withstand occasional exposure to humidity and wetness, extreme cold, extreme heat, and vibrations, but can never tolerate unprotected heights, moving mechanical parts, operating a motor vehicle, or dusts, odors, fumes and pulmonary irritants. (AR 360).

"In addition to considering the medical opinions of doctors, an ALJ must consider the opinions of medical providers who are not within the definition of 'acceptable medical sources.'" Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017); see 20 C.F.R. §§ 404.1527(b), (f), 416.927(b), (f); SSR 06-03p, at *3 ("Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."); Garrison, 759 F.3d at 1013–14 (other sources "can provide evidence about the severity of a claimant's impairment(s) and how it affects the claimant's ability to work") (citation and alterations omitted). While opinions from "other sources" are not

entitled to the same deference as "acceptable medical sources," an ALJ "may discount testimony from these 'other sources' [only] if the ALJ gives reasons germane to each witness for doing so." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted). "The same factors used to evaluate the opinions of medical providers who are acceptable medical sources are used to evaluate the opinions of those who are not." Revels, 874 F.3d at 655. "Those factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the doctor." Id.; see 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). Indeed, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." SSR 06-03p, at *5.

The ALJ's reasons for discounting Viitala's opinion reads, in full:

> I give some weight, but not great weight, to the opinion of Katerina Vitala [sic], a certified physician's assistant. These opinions are from a time when [Plaintiff] was experiencing an acute exacerbation and worsening symptoms as indicated by Ms. Vitala [sic] in her letter dated March 6, 2016. As such, these assessments do not reflect the severity and limiting

effects of [Plaintiff's] impairments on a consistent basis for any period of 12 months or more. Furthermore, a certified physician assistant is not an acceptable medical source under Social Security regulations, and an opinion that is not entitled to be given the same weight as a qualifying medical source opinion.

(AR 27) (citation omitted). After careful consideration, the Court finds that the ALJ did not give specific, supported, and germane reasons for discounting Viitala's opinion.

First, the ALJ misstates the law governing the weight to be given to opinions from "other sources." While "[t]he fact that an opinion is from an 'acceptable medical source' is a <u>factor</u> that may justify giving that opinion greater weight than from a medical source who is not an 'acceptable medical source,' " the applicable regulations do not preclude the ALJ from assigning the <u>most</u> <u>weight</u> to Viitala's opinion. SSR 06-03p, at *5 (emphasis added); <u>see</u> <u>Revels</u>, 874 F.3d at 655 ("Under certain circumstances, the opinion of a treating provider who is not an acceptable medical source may be given greater weight than the opinion of a treating provider who is — for example, when the provider has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.") (citation omitted). That is especially the case here where there are no contrary opinions from a treating source and the ALJ gave "little

weight" to the opinions of the consultative examiner and the State agency consultants. (AR 26-27).

Second, contrary to the ALJ's conclusion (AR 27), the medical record reflects that Plaintiff's impairments have persisted and will persist for at least twelve months. In June 2015, Plaintiff complained of chronic pain. (AR 514). In August 2015, Plaintiff reported progressively worsening pain and weakness. (AR 510). An examination found diffuse weakness in grip strength and major joints and extremities, with reduced range of motion. (AR 511). In November 2015, Plaintiff reported a flare-up of left-sided numbness, weakness, and pain. (AR 506). In February 2016, Plaintiff reported worsening pain, radiating from her back to all extremities. (AR 494). She asserted struggling to complete activities of daily living, including getting to the bathroom, self-care, and housekeeping. (AR 494). In March 2016, Plaintiff reported chronic, worsening, severe pain. (AR 493). In April and May 2016, Plaintiff reported continuing chronic pain. (AR 488, 490). She reported impaired quality of life and difficulty completing activities of daily living due to pain and weakness. (AR 488). She asserted an inability to lift objects of more than a couple pounds, walk further than her mailbox, climb stairs, or drive. (AR 488). In June 2016, a physical examination indicated arthralgias, back pain, joint stiffness, and myalgias. (AR 485). Plaintiff ambulated with the aid of a walker and had a slowed gait. (AR 486). In July 2016, Plaintiff reported constant, moderate, sharp pain, primarily located in her spine and radiating to her

left thigh. (AR 475). A physical examination was positive for chronic back pain and myalgias. (AR 475).

Third, Viitala's diagnoses, examinations, and treatment recommendations were approved, confirmed, and corroborated by her supervising physician, Dr. Kasko, who is an "acceptable medical source." Dr. Kasko co-signed Viitala's treatment records, i.e., the type of fact that the Revels court found meaningful. (AR 488, 490, 492, 494, 496, 498, 500, 502); ("[The nurse practioner's] check-the-box assessment was co-signed by an acceptable medical source in her clinic . . .") Revels, 874 F.3d at 665. Further, on several occasions, Dr. Kasko performed his own examinations, concurring in Viitala's findings. (AR 485-87, 475). A provider who is not an acceptable medical source but who is closely supervised by a physician in treating a claimant may be considered "an acceptable medical source" even though that "other source" would not be considered an "acceptable medical source" in treating the claimant independently. Cf. Britton v. Colvin, 787 F.3d 1011, 1013 (9th Cir. 2015) (rejecting the contention that a nurse practitioner's opinion should be accorded deference where "nothing in the record indicates that [the nurse practitioner] worked so closely under [either of two physicians] as to be considered an agent of either"); Molina, 674 F.3d at 1111 (holding that because the record did not show that a physician's assistant worked under a physician's close supervision, the ALJ's "germane reasons" were sufficient to discount the physician's assistant's opinions). Even if Viitala is not an acceptable medical source, the ALJ's conclusion that Viitala's opinion did not establish the requisite

twelve-month severity is contrary to the medical record and is, therefore, not a germane reason for rejecting her opinion, as discussed above.

Finally, there are strong reasons to assign great weight to Viitala's opinion. She was a treating source who examined Plaintiff on a monthly basis since June 2015. See 20 C.F.R. § 404.1527(c)(1)-(2), (f) (explaining that an opinion from a source who has examined the claimant and had a longer treatment relationship should generally be given greater weight); accord SSR 06-03p, at *5 (listing factors for considering opinion evidence from "other sources"). Viitala's opinion is supported by and consistent with the medical record, as discussed above. See 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."), (c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); accord SSR 06-03p, at *5. Further, Viitala's treatment records were co-signed by an acceptable medical source, as noted above. See Revels, 874 F.3d at 665.

The Commissioner contends that "even if [the ALJ's] reason for discounting Ms. Viitala's 'other source' opinion was deficient, the error was harmless." (Dkt. No. 20 at 5). "Even when the ALJ commits legal error, [a federal court will] uphold the decision where that error is harmless." Treichler v. Comm'r of Soc. Sec.

Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). Nevertheless, Ninth Circuit "precedents have been cautious about when harmless error should be found." Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015). The Commissioner argues that any error is harmless because "[e]very other opinion in the record - all of which were from acceptable medical sources - indicated that Plaintiff did not have any significant work-related limitations." (Dkt. No. 20 at 5). The ALJ, however, rejected all of these other opinions, finding that the they were all deserving of "little weight." (AR 26-27). This Court cannot substitute its opinion for that of the ALJ's in order to conclude that the ALJ's error rejecting Viitala's opinion was harmless. See Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) ("A reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless."); Marsh, 792 F.3d at 1172 (a district court may not find harmless error by "affirm[ing] the agency on a ground not invoked by the ALJ").

In sum, the ALJ failed to provide specific, supported, and germane reasons for discounting Viitala's opinion. The matter is remanded for further proceedings.[5] On remand, the ALJ shall reevaluate the weight to be given Viitala's opinion, taking into

---

[5] Plaintiff also argues that the ALJ failed to articulate clear and convincing reasons for rejecting her subjective statements. (Dkt. No. 17 at 9-11). However, it is unnecessary to reach Plaintiff's arguments on this ground, as the matter is remanded for the alternative reasons discussed at length in this Order.

account all the factors for considering opinion evidence. 20 C.F.R. §§ 404.1527, 416.927; SSR 06-03p.

**VI.**

**CONCLUSION**

Accordingly, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 15, 2018

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS OR ANY OTHER LEGAL DATABASE.**

18